**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 22-cv-0779-WJM-MDB

OASTER DEVELOPMENT, LLC,

Plaintiff,

v.

WD CONSULTING, d/b/a WD CONSTRUCTION;
and WILLIAM D. TIBBITT,

Defendants.

---

**ORDER DENYING MOTION FOR NEW TRIAL, OR**
**IN THE ALTERNATIVE, MOTION TO RENEW RULE 50 MOTION**

---

Before the Court is Plaintiff Oaster Development, LLC's ("Oaster") Motion for New Trial, or in the Alternative, Motion to Renew Rule 50 Motion ("Motion"). (ECF No. 242.) Defendants WD Consulting d/b/a WD Construction ("WD Construction") and William D. Tibbitt (together, "Defendants") filed a response (ECF No. 248), to which Oaster filed a reply (ECF No. 249).

For the following reasons, the Motion is denied.

## I. BACKGROUND

In this lawsuit, Oaster sued various individual actors and entities involved in the design and construction of a new church campus for Woodmen Valley Chapel ("WVC") in Colorado Springs (the "Monument Project"). (*See generally* ECF No. 1.) After WVC terminated Oaster's contract for the architectural design of the Monument Project, WVC hired WD Construction, a general contractor, and Bucher Design Studio, Inc. ("Bucher

Design"), another architectural firm, to complete the design and construction of the building. (*Id.*) Oaster claimed that these contractors and their respective proprietors, alongside church representative Les Khronfeldt, unlawfully interfered with its contract with WVC, then misappropriated Oaster's copyrighted architectural plans for the Monument Project. (*Id.*)

The majority of Oaster's claims in this action were ultimately resolved through arbitration or private resolution. (*See* ECF Nos. 48, 49, 99-5, 130, 137.) However, post-summary judgment rulings, its claims for copyright infringement, tortious interference, and civil conspiracy against WD Construction and its owner, Tibbitt remained. (ECF Nos. 162, 163.) The action proceeded to a 4-day jury trial on those claims on February 2, 2026. (ECF Nos. 193, 214.)

At the close of Oaster's evidence on February 4, 2026, Defendants made an oral motion for judgment as a matter of law pursuant to Rule 50(a) against all three of Oaster's claims. (ECF No. 220 at 2; ECF No. 235 at 145.) At the close of all the evidence, Defendants renewed their Rule 50(a) motion and Oaster, atypically, made its own, affirmative oral Rule 50(a) motion seeking judgment as a matter of law on its copyright claims against both Defendants. (ECF No. 220 at 3; ECF No. 235 at 196, 198–206.) Oaster argued "no reasonable jury could find that there was not copyright infringement in this case" based on "Mr. Bucher's admi[ssion] from the witness stand" that Bucher Design took Oaster's copyrighted material and "massage[d] it, . . . use[d] it as the starting point, . . . and develop[ed] it into a . . . slightly different product." (*Id.* at 201–202.)

The Court granted Defendants' Rule 50(a) motion in part to clarify that Oaster

was asserting a direct copyright infringement theory against WD Construction only, and vicarious and contributory copyright infringement theories, tortious interference with contract, and civil conspiracy claims against Tibbitt only. (ECF No. 236 at 4.) It denied Defendants' Rule 50(a) motion in all other respects and likewise denied Oaster's Rule 50(a) motion in full. (*Id.* at 4–12.)

The jury returned a full defense verdict on February 5, 2026. (ECF No. 228.)

## II. LEGAL STANDARDS

### A. Rule 50(b)

Judgment as a matter of law is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Stated another way, "[j]udgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." *Elm Ridge Expl. Co., LLC v. Engle,* 721 F.3d 1199, 1216 (10th Cir. 2013) (quoting *Escue v. N. Okla. Coll.,* 450 F.3d 1146, 1156 (10th Cir. 2006)). In reviewing a Rule 50 motion, the Court must draw all reasonable inferences in favor of the nonmoving party. *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009).

Where a party properly moves for judgment as a matter of law prior to the case being submitted to the jury, that party may renew the motion after the jury returns its verdict. *See* Fed. R. Civ. P. 50(b); *Atchley v. Nordam Grp.*, 180 F.3d 1143, 1147–48 (10th Cir. 1999). In resolving a Rule 50(b) motion, the Court "will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Deters v.*

*Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000).

**B. Rule 59(a)**

Under Federal Rule of Civil Procedure 59(a), "[t]he court may, on motion, grant a new trial on some or all of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." However, motions for a new trial are "not regarded with favor" and should be granted "only with great caution, being addressed to the sound discretion of the trial court." *United States v. Page*, 828 F.2d 1476, 1478 (10th Cir. 1987) (internal quotation marks omitted). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Nosewicz v. Janosko,* 857 F. App'x 465, 468 (10th Cir. 2021) (quoting 11 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2803 (3d ed. 2021 update) (footnote omitted in original)).

Here, Oaster argues a new trial is warranted both because the jury's verdict was against the weight of the evidence and due to jury instruction error. (ECF No. 242.)

"[A] motion for a new trial on the grounds that the jury verdict is against the weight of the evidence normally involves a review of the facts presented at trial, and thus involves the discretion of the trial court." *Escue,* 450 F.3d at 1156–57 (internal citation omitted). "If a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *M.D. Mark, Inc. v. Kerr-McGee Corp.,* 565 F.3d 753, 762 (10th Cir. 2009). Courts "view[] all the evidence in the light most favorable to

the prevailing party." *Escue,* 450 F.3d at 1156.[1] "The jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *Snyder v. City of Moab,* 354 F.3d 1179, 1188 (10th Cir. 2003) (internal quotations and citations omitted).

"A motion for new trial may [also] raise errors of law arising out of jury instructions, but a new trial is warranted only when, 'having given full respect to the jury's findings and viewing the entire evidence, the trial judge is left with the definite and firm conviction that a mistake has been committed.'" *United States Welding, Inc. v. TECSYS, Inc.,* 2017 WL 4331061, at *1 (D. Colo. Aug. 24, 2017) (quoting *Hughes v. Regents of Univ. of Colo.,* 967 F. Supp. 431, 437 (D. Colo. 1996)). Courts "read and evaluate the jury instructions in light of the entire record to determine if they fairly, adequately and correctly state the governing law and provide the jury with an ample understanding of the applicable principles of law and factual issues confronting them." *Lederman v. Frontier Fire Prot., Inc.,* 685 F.3d 1151, 1154–55 (10th Cir. 2012) (internal citation omitted). The pertinent inquiry is not whether the instructions "are flawless, but whether the jury was misled in any way and whether it had a[n] understanding of the issues and its duty to decide those issues." *Brodie v. Gen. Chem. Corp.,* 112 F.3d 440, 442 (10th Cir. 1997) (internal quotation marks omitted).

---

[1] In its recitation of the applicable legal standards, Oaster states: "When ruling on a motion for new trial, the court does not view the evidence in the light most favorable to either party." (ECF No. 242 at 1–2.) The Court disagrees with this articulation of the applicable legal standard, particularly where, as here, Oaster seeks a new trial based on the weight of the evidence.

## III. ANALYSIS

Oaster's Motion does not clearly delineate the grounds upon which it seeks judgment as a matter of law under Rule 50(b) and the grounds upon which it seeks a new trial under Rule 59(a). As best the Court can determine, however, Oaster's arguments are as follows: (1) it is entitled to judgment as a matter of law or, in the alternative, a new trial on its copyright claims based on the weight of the evidence; (2) it is entitled to a new trial on its copyright claims based on alleged jury instruction error; and (3) it is entitled to a new trial on its tort claims based on the weight of the evidence. (*See generally* ECF No. 242.)

### A. Copyright Claims—Weight of the Evidence

Oaster first argues that "[t]he elements of infringement were clearly established at trial" and it was thus "entitled to judgment as a matter of law; and in the alternative, the jury's defense verdict was contrary to the evidence in the case." (*Id.* at 3–4.) The Court disagrees.

The Court instructed the jury that, in order to prevail on its copyright infringement claim, Oaster "must prove two things:" first, that "Plaintiff Oaster is the owner of a work protected by the Copyright Act," and second, that "Defendant WD infringed one or more of the rights granted by the Act." (ECF No. 223 at 25.) With respect to the first element, during the parties' oral arguments on their respective Rule 50(a) motions, Defendants stipulated to the fact that Oaster owned the registrations for the copyrights to the architectural works at issue. (ECF No. 235 at 203.) Thus, the parties' arguments center on the second element of Plaintiff's copyright claims.

Oaster argues it "proved that W.D. infringed one or more of the rights granted by

[the Act]"—namely, "the right to make derivative works and the right to reproduce the copyrighted work"—"when W.D. used the Oaster plans, as modified by Bucher Design, to build the church building." (ECF No. 242 at 3.) Oaster suggests infringement was conclusively established when "WD and Tibbitt admitted that the plans they used to build the church building at Monument was the finished plans prepared by Bucher Design based on the set of plans given to it by Ed Houle on a thumb drive." (*Id.* at 3 (citing ECF No. 235 at 15–16).) According to Oaster, "the fact that W.D. used copyrighted material to build the building was not subject to an issue of credibility of witnesses or of contrary evidence." (*Id.* at 4.)

Defendants note their disagreement with Oaster's characterization of the evidence but, more significantly, counter that judgment as a matter of law is inappropriate because "Plaintiff failed at trial to even meet its threshold burden of demonstrating similarity between the alleged infringing work and the elements of Plaintiff's copyrighted work that are legally protected." (ECF No. 248 at 6.) Indeed, they continue, "Plaintiff failed to . . . even identify[] those portions of its material that could be protectable, much less offer any compelling evidence to show that such protectable portions are substantially similar to the drawings prepared by Bucher Design." (*Id.*)

Defendants are right. In *Savant Homes, Inc. v. Collins,* the Tenth Circuit explained that the second element of copyright infringement—"the copying of constituent elements of the work that are original"—itself "consists of two components." 809 F.3d 1133, 1138 (10th Cir. 2016) (citation omitted). "First, a plaintiff must show a defendant copied the plaintiff's work 'as a factual matter.'" *Id.* (quoting *Blehm,* 702 F.3d at 1199). "Second, a plaintiff must demonstrate 'substantial similarity between the

allegedly infringing work and the elements of the copyrighted work that are legally protected.'" *Id.* (quoting *Blehm,* 702 F.3d at 1199). To decide the latter substantial similarity issue, upon which Defendants focus, "a court must determine (1) which elements of the copyrighted work are protectable, and (2) whether these elements are substantially similar to the accused work." *Id.*

In its briefing, Oaster does not point to any evidence, testimonial or otherwise, adduced at trial indicating that "(1) any individual element or (2) any arrangement of elements was protectable." *Savant Homes,* 809 F.3d at 1132. At best, Oaster cites the testimony of Pat Morgan, the architect who actually drew the plans at issue, to the effect that "overall, the plans are similar to one another." (ECF No. 234 at 146.) But testimony opining on the overall similarity between the Bucher Design plans and Oaster's plans, without identifying the elements that are legally protected and why, is not enough. *See Savant Home,* 809 F.3d at 1140–41 (affirming grant of summary judgment to defendant on copyright claims where plaintiff's expert's report "only opined on similarities between the accused houses and the [copyrighted architectural plans] and failed to address which elements were protected or why"); *see also id.* (noting plaintiff failed to argue in its response "which aspects of the [copyrighted architectural plans] were protectable or cite any supporting evidence").

Oaster also complains that merely "[p]ointing out some non-protectible elements, as Bucher did in his testimony, does not create a defense to liability for infringement." (ECF No. 242 at 7.) This seems to imply, however, that Defendants carried the burden of *negating* substantial similarity. As Oaster appears to acknowledge in its briefing, "substantial similarity is an essential element of copyright infringement." *Savant Homes,*

809 F.3d at 1143. (*See* ECF No. 242 at 6 ("Similarity is a major element of a copyright infringement claim.").) Thus, *Oaster* carried the burden of demonstrating "substantial similarity between the allegedly infringing work and the elements of the copyrighted work that are legally protected." *Blehm,* 702 F.3d at 1199 (quotations omitted).

Similarly, Oaster laments "that the defense never asked the Court to rule on protectable components" pre-trial, (ECF No. 242 at 7), and suggests the Defendants' emphasis on the substantial similarity element represented a "dramatic[]" shift from its prior defense theory which centered on a license defense, (ECF No. 239 at 3 n.1). While assuming for present purposes that both assertions may be true, neither excuses Oaster's own affirmative burden to establish the essential elements of its copyright claims at trial.

Accordingly, Oaster's failure of proof on the issue of substantial similarity alone was sufficient reason to deny its affirmative Rule 50 motion at trial, and it remains sufficient reason to deny Oaster a new trial based on the argument, under Rule 59, that the jury's verdict is contrary to the weight of the trial evidence.

**B. Copyright Claims—Jury Instruction Error**

Oaster's next takes issue with the Court's instructions to the jury on "Copying," (ECF No. 223 at 29), vicarious infringement, (*id.* at 30), and contributory infringement, (*id.* at 31). Though Oaster's objections to these instructions are multifold, the deficiencies it identifies appear related to the same core issue: that the instructions purportedly "did not instruct the jury properly that W.D. did not need to copy the work itself" to be found liable for copyright infringement. (ECF No. 242 at 4.)

To demonstrate this issue, Oaster highlights Defendants' emphasis in closing

argument that (in Oaster's summation) "neither Mr. Tibb[i]tt personally nor his company actually made a copy of the work" but instead only "transmit[ted] a thumb drive (which it was unable to open and read) to Bucher Design." (*Id.* at 5.) Oaster contends this misled the jury because, under the circumstances of this case, "[g]iving a copy of the work to Bucher Design in order to make a derivative work was sufficient to establish copying." (*Id.*) It accordingly insists that "[t]he jury should have been informed that a derivative work is defined as a work based upon one or more pre-existing works and that the copyright owner has the exclusive right to prepare derivative works based upon its copyrighted work." (*Id.*)[2]

In the same vein, Oaster takes issue with the Court's decision to strike the second of the following sentences from the "Copying" instruction: "Defendant WD is liable only if Defendant WD copies or takes aspects of Plaintiff's work that were original with Plaintiff. *This does not mean that you have to find that Defendant WD copied or took Plaintiff's work*." (ECF No. 223 at 29 (emphasis added).) Despite Plaintiff's counsel express representation on the record that he "[did not] have any problem deleting that sentence," Oaster now argues that the stricken sentence "would have dealt directly with the argument made by counsel in closing argument that W.D. did not copy or take Plaintiff's work when it passed it on to its architect." (ECF No. 242 at 6.)

The Court pauses to note that Oaster's argument seems to inject a *different* theory of infringement than that summarized above. That is, earlier in the Motion, Oaster argued it was entitled to judgment as a matter of law on its copyright claims

[2] Notably, Oaster never tendered an instruction on the definition of a derivative work, nor objected to the omission of such an instruction at trial.

because it "proved that W.D. infringed one or more of the rights granted by that act *when W.D. used the Oaster plans, as modified by Bucher Design, to build the church building*." (*Id.* at 3 (emphasis added).) Oaster's arguments regarding the purported errors in the Court's jury instructions, on the other hand, suggest that WD Construction's act of giving the thumb drive to Bucher Design was the infringing act giving rise to WD Construction's liability for direct infringement. And if that is the theory Oaster intended to present to the jury at trial, it is less than clear to the Court why anything Bucher Design did with the plans thereafter, including creating a derivative work, is relevant.

In any event, the Court *did* instruct the jury that "[t]he owner of a copyright has the exclusive right to . . . [p]repare derivative works based upon the copyrighted work." (ECF No. 223 at 26; *see also id.* at 30 ("The owner of a copyright generally has the right to exclude any other person from . . . preparing derivative works . . . .").) Further, consistent with the stipulated jury instruction proffered by the parties, the jury instructions captured a theory of liability based on "the transfer of an unauthorized copy of a copyrighted work," inasmuch as the language directly following the sentence the Court struck stated:

> If the work was copied or taken from Plaintiff Oaster, but not by Defendant WD but rather by Defendant's supplier, *that does not protect Defendant WD from liability*. Liability attaches to the transfer of an unauthorized copy of a copyrighted work, regardless of whether the one who makes the transfer is the one who made that copy, and regardless of whether the receiver is aware that the work is an unauthorized copy.

(ECF No. 223 at 29 (emphasis added); *see also* ECF No. 172-5.)

It is clear these instructions directly address Oaster's objection. Oaster nonetheless does not address these instructions in its Motion, nor explain why, despite

their inclusion, the omission of a further instruction on the specific definition of a derivative work left the jury with an inadequate understanding of the governing law and prejudiced Oaster's substantial rights at trial. *See Lederman,* 685 F.3d at 1154–55.

For similar reasons, Oaster takes issue with the Court's instructions on vicarious and contributory infringement to the extent they instructed the jury that Oaster was required to prove, among other elements, that "Defendant WD copied original elements of the copyrighted work." (ECF No. 223 at 30, 31.) Oaster argues that "since Mr. Tibb[i]tt did not personally copy the work and because no one else at W.D. itself 'copied the work,' these instructions with respect to Mr. Tibb[itt]'s copyright infringement were also confusing and failed to properly inform the jury of what was necessary for Plaintiff to prevail on its claims." (ECF No. 242 at 8.)

At least in a legal sense, "'[c]opying' is . . . a shorthand to refer to the infringement of a copyright holder's exclusive rights under a copyright." *Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1284 (10th Cir. 1996). Thus, if there was no "copying" by WD Construction, then there was no direct infringement by WD Construction, and no vicarious or contributory infringement by Tibbitt. If Oaster's argument, however, is that the jury was nonetheless confused by the colloquial meaning of "copying," the Court reiterates that its instruction on "Copying" captured a theory of liability where "the work was copied or taken from Plaintiff Oaster, but not by Defendant WD but rather by Defendant's supplier," as discussed above. (ECF No. 223 at 29.)

Furthermore, and in the alternative, the vicarious and contributory infringement instructions given to the jury were taken directly from the parties' stipulated jury instructions. (*See* ECF Nos. 172-6, 172-7.) Thus, to the extent Oaster now argues that

those instructions incompletely or inaccurately captured the factual theory underpinning its vicarious and contributory infringement claims against Tibbitt, it waived that argument by submitting a proposed instruction containing the very deficiency or error of which it now complains.

For all these reasons, the Motion is denied to the extent Oaster seeks a new trial based on alleged jury instruction error.

**C. Tort Claims—Weight of the Evidence**

Lastly, Oaster argues it "is entitled to a new trial on the tort claims brought by it against Mr. Tibb[i]tt" because "[t]he jury verdict for the Defendant was overwhelmingly and decidedly against the weight of the evidence." (ECF No. 242 at 10.) The Court, again, disagrees.

As noted above, Oaster asserted two tort claims against Tibbitt at trial "for intentional interference with the contract between Oaster Development and the church, and the conspiracy with Mr. Khronfeldt to interfere with the contract." (*Id.* at 9.) In order to prevail on the former tortious interference with contract claim, the Court instructed the jury that Oaster as required to prove five elements: (1) Oaster had a contract with Woodmen Valley Chapel; (2) Tibbitt knew or reasonably should have known of the contract; (3) Tibbitt, by words or conduct, or both, intentionally caused Woodmen Valley Chapel to terminate its contract with Oaster; (4) Tibbitt's interference with the contract was improper; and (5) Tibbitt's interference with the contract caused Oaster damages. (ECF No. 223 at 35.)

Oaster argues "[t]he evidence that *Mr. Khronfeldt* committed tortious interference with the contract was admitted by the witness and uncontradicted." (ECF No. 242 at 9

(emphasis added).) In support, Oaster summarizes, without citation to any specific portion of the trial record, Khronfeldt's testimony that "*he* intended to interfere with the contract, wanted the contract terminated, and *he* took action to convince the lead team to terminate Oaster." (*Id.* (emphases added).) Even accepting Oaster's contentions as true, the fact that the evidence adduced at trial established that *Khronfeldt* tortiously interfered with the contract does not lend itself to the conclusion that *Tibbitt,* independently, tortiously interfered with the contract.

Oaster next appears to summarize evidence supporting its civil conspiracy claim. That claim required Oaster to prove four elements: (1) Tibbitt and at least one other person agreed, by words or conduct, to accomplish a goal through unlawful means; (2) one or more unlawful acts were performed to accomplish the goal; (3) Oaster had damages and losses; and (4) Oaster's damages and losses were caused by the acts performed to accomplish the goal. (ECF No. 223 at 39.) The Court further instructed the jury that "unlawful means" include "tortiously interfering with another's contract." (*Id.* at 40.)

Oaster contends, again without citation to any specific testimony in the record, that Khronfeldt "admitted that he involved Mr. Tibb[i]tt in his scheme and plan to get Oaster fired." (ECF No. 242 at 9.) It further argues that the evidence showed Tibbitt told WVC representative Ed Houle he would not be willing to work with Oaster; that "[t]he emails that [Khronfeldt] sent to the lead team were further sent to Mr. Tibb[i]tt personally"; and that "Mr. Tibb[i]tt personally suggested language for Mr. Khronfeldt to use criticizing Mr. Oaster personally as being unreliable and misrepresenting facts as well as being incompetent in this job." (*Id.* at 9–10.) Indeed, as further summarized by

Oaster, Tibbitt directly "testified at trial that he thought that Mr. Oaster was incompetent and lacked necessary qualities for the work." (*Id.* at 9.)

Defendants, however, point to still other evidence at trial refuting Tibbitt's involvement in an alleged "scheme and plan to get Oaster fired." Khronfeldt, for one, testified he was unaware of any facts supporting that Tibbitt "worked with [him] to get Mr. Oaster fired on the Monument project." (ECF No. 235 at 131.) The Court takes further note of Khronfeldt's testimony that Tibbitt, as the general contractor, "had a responsibility to inform" Khronfeldt, as the owner's representative, of issues arising on the concurrent Heights Project. (*Id.* at 124–25.) From this testimony, the jury could plausibly draw the inference that any "criticisms" Tibbitt reported of Oaster were not a product of an agreement between Tibbitt and Khronfeldt to get Oaster fired from the Monument Project, but instead a consequence of their working relationship on the prior Heights Project. Further bolstering such an inference, Houle testified that the church leadership team had received information regarding Oaster's purported poor performance on the Heights Project from "several independent sources." (ECF No. 234 at 15.) It was the jury's sole province to assess the credibility of this testimony, and the Court will not second guess those credibility determinations. *See Deters*, 202 F.3d at 1268.

In sum, the Court agrees with Defendants there was sufficient evidence adduced at trial for the jury to find in their favor on Oaster's tort claims. For this reason, Oaster's Motion is likewise denied with respect to the tortious interference and civil conspiracy claims.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff Oaster Development, LLC's Motion for New Trial, or in the Alternative, Motion to Renew Rule 50 Motion (ECF No. 242) is DENIED.

Dated this 14th day of September, 2026.

BY THE COURT:

William J. Martínez
Senior United States District Judge